93 N.J. Super. 374 (1967)
225 A.2d 755
CORBISCELLO BROTHERS, INC., A NEW JERSEY CORPORATION, AND NICHOLAS CORBISCELLO, PLAINTIFFS,
v.
THE BOROUGH OF FORT LEE AND THE MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 9, 1967.
*375 Mr. Leon S. Wolk, attorney for plaintiffs.
Mr. William V. Breslin, attorney for defendants.
KOLE, J.C.C. (temporarily assigned).
Plaintiffs, a taxpayer of Fort Lee and the second lowest bidder, instituted this action in lieu of prerogative writs for an order (1) declaring invalid defendant borough's rejection of all bids received on August 10, 1966 pursuant to its invitation to bid dated August 1966 for work in connection with the improvement of Abbott Boulevard; (2) requiring defendant to award plaintiff a contract therefor as the lowest bidder who conformed to the specifications, and (3) enjoining defendant from re-advertising for new bids on the job or awarding a contract to anyone after such re-advertisement. On September 2, 1966 I issued an order, pursuant to plaintiff's application, restraining defendant only from awarding a contract after re-advertisement pending determination of the action. The borough subsequently re-advertised on the basis of the same proposal and specifications, and received bids on September 14, 1966 pursuant thereto, but has not awarded a contract thereunder because of the restraint.
Plaintiff then moved for summary judgment, contending that the lowest bidder, Giovanni Asphalt Company, on the first bidding did not conform to the specifications with respect to rock excavation. Defendant made a cross-motion for summary judgment. The specifications provided for a "minimum bid price for rock excavation * * * at eight ($8.00) dollars per cubic yard" (emphasis supplied). Giovanni bid $5 per cubic yard; plaintiff bid $18 per cubic yard. The total *376 amounts bid, according to the estimates of rock excavation and other variable items, made by the borough engineer and given in the bid proposal, were as follows: Giovanni  $17,965; plaintiff  $18,193. The total amounts bid by other bidders exceeded plaintiff's.
The borough rejected all bids under an express reservation of the authority to do so in its instructions to bidders, because, among other reasons, Giovanni's rock excavation bid was below the specifications minimum and to accept the next second lowest bid  plaintiff's  "might not be obtaining the most advantageous proposal which would be in the best interests of the community."
Plaintiff claims defendant could not reject all bids and was required to award the contract to it as the lowest bidder who complied with the specifications.
The proposal for bidding estimated the amount of rock to be excavated at 240 cubic yards. But paragraph 21 of the "Instructions to Bidders" warns them that this estimate is approximate only, "being given as a basis for the uniform comparison of bids, and the Board does not expressly or by implication agree that the actual amount of work will correspond therewith"; and paragraph 22 requires bidders to satisfy themselves by personal examination of the proposed location of the work, or otherwise, as to the accuracy of the estimates.
It is clear from the proofs that if the quantity of rock were actually more or less than 240 cubic yards, the total price to the borough would increase or decrease by an amount equal to the unit price bid per cubic yard multiplied by the excess over, or deficiency in, the estimated 240 cubic yards. Hence, the one who appears to be the low bidder in total price may in fact, after the job is done, be a high bidder; and the converse may also be true.
The rationale for permitting unit bidding for a variable uncertain item such as rock excavation has been stated as follows (Armaniaco v. Borough of Cresskill, 62 N.J. Super. 476 (App. Div. 1960)):
*377 "Defendants maintain that the municipality must fix the unit price of an item as uncertain as rock excavation or face the possibility of financial catastrophe. The argument proceeds as follows: Unit price bidding and unbalanced bidding are now permitted by law; the risk is that a successful overall low bidder will submit an extremely high unit price for rock excavation, compensating therefor with low bids on other items; if the amount of rock actually encountered greatly exceeds the amount estimated, the result will be serious financial loss to the municipality." (at pp. 484-485)
A number of legal issues have been raised by both parties on their respective motions for summary judgment:
1. May a municipality reserve the right to reject all bids? Cf. Commercial Cleaning Corporation v. Sullivan, 47 N.J. 539, 547 (1966), with Shore Gas & Oil Co. v. Spring Lake Borough, 27 N.J. Super. 33, 37 (App. Div. 1953).
2. Does permitting a municipality to reject all bids and readvertise the same proposal thwart the legislative purpose of the bidding statute by in effect lessening competition, by giving information to subsequent bidders as to the initial bids made and by thereby facilitating municipal favoritism in making awards?
3. If a municipality may reserve the right to reject all bids, may it reject all bids in a case such as this or must it award the contract to the next lowest bidder who complies with the specifications? This also involves the question of whether Giovanni's failure to comply with the minimum bid requirements was so substantial a variance from the specifications as to warrant rejection of its bid.
4. Was the reason the municipality gave for rejecting all bids and refusing to award the contract to the next lowest bidder who complies with the specifications a legally valid one which the reviewing court must respect?
But neither party has raised what I believe to be the most important question in the case and what may have led to the problem in the first place  namely, whether minimum unit bids legally may be set by the municipality in its bidding specifications. If the answer is in the affirmative, then the foregoing issues raised by plaintiff and defendant need to be *378 answered. If the answer is in the negative, then such issues are moot, for both the original and re-advertised proposals to bid are void, and the bidding requirements must be recast to eliminate any reference to minimum bids. Armaniaco v. Borough of Cresskill, supra.
Nothing in the scanty proofs presented on these motions indicates any legally justifiable reason for restricting competitive bidding and possibly increasing costs to the municipality by providing for minimum unit bids. On its face such minimum bid requirements appear to be invalid. Cf. Armaniaco v. Borough of Cresskill, supra, where the Appellate Division held that a bid proposal containing a fixed unit price for rock excavation was void as violative of the bidding statute policy of unstifled competition. In the course of its opinion it suggested that a maximum unit price could be set legally by the municipality in order to avert serious financial loss to it if the amount of rock actually encountered greatly exceeded the amount estimated by its engineer, saying:
"It is interesting to note that if submitted to free competition, the testimony disclosed * * * the price probably would have been less than $20 per cubic yard [the price fixed by the bid proposal]. * * * First, the municipality could have set $20 per cubic yard as the maximum price it would consider, leaving the entire range up to the $20 open for competitive bidding. Second, it could have reserved, as it did herein, the right to reject unbalanced bids. The rejection of a bid with an extremely high unit rock excavation price would have precluded the feared evil." (At pp. 486-487; emphasis supplied).
That neither party raised the question of the basic validity of the minimum bid requirement on their motions for summary judgment does not mean that the court should not raise it on its own motion. This is particularly so here where the issue is one of public importance to municipalities, and if the bid requirements are invalid, the entire bidding proposal would be void. Of course, the parties must be given a full opportunity to meet the new issue thus raised. Band's Refuse Removal, Inc. v. Fair Lawn Boro., 62 N.J. Super. 522, 553 (App. Div. 1960); Cohen v. Fair Lawn Dairies, Inc., 86 N.J. *379 Super. 206, 210 (App. Div. 1965), affirmed 44 N.J. 450 (1965); Platt v. New Irvington Hotel of Lakewood, Inc., 85 N.J. Super. 330, 335 (App. Div. 1964).
The question involves the factual and policy reasons justifying minimum bid requirements in a case of this kind. Hence, although the ultimate conclusion as to the validity of such requirements is one of law, before that decision may be made, genuine issues of fact must be tried and determined in a plenary trial. Some of the other issues raised by the parties  e.g., the factual basis for the borough's rejection of all bids, the possibility of favoritism by the borough in its rejection of all bids  also appear to call for a plenary hearing. United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193 (1961); Bruno v. City of Long Branch, 35 N.J. Super. 304 (App. Div. 1955), affirmed 21 N.J. 68 (1956).
The motions for summary judgment of both parties are, therefore denied.
The matter will be set down for pretrial conference on Friday, January 13, 1966 at 3 P.M., and for trial at an early date thereafter. The restraint of September 2, 1966 on accepting bids received September 14, 1966 as a result of the re-advertisement of the proposal will be continued until the decision of the court after the trial.